UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re: Chapter 11

CINEMAWORLD OF FLORIDA, INC. Case No. 25-17693-MAM

Debtor.
_______________________________________/

# PLAN OF REORGANIZATION FOR CINEMAWORLD OF FLORIDA, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Elena Paras Ketchum
Florida Bar No. 0129267
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: eketchum@srbp.com
**ATTORNEYS FOR DEBTOR**

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, WEST PALM BEACH DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THIS PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE A FURTHER AMENDED OR AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME. REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTOR'S HISTORY, BUSINESS, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE, AND THE MEANS OF FUNDING THIS PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## INTRODUCTION

Cinemaworld of Florida, Inc., the Debtor and Debtor in Possession in this Reorganization Case (the "**Debtor**"), proposes this Plan of Reorganization for Cinemaworld of Florida, Inc. Under Chapter 11 of the Bankruptcy Code (the "**Plan**," as more particularly defined in Article 1 of this document) pursuant to the provisions of Chapter 11 of the Bankruptcy Code and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 1 of the Plan or as otherwise defined herein. The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Debtor's Disclosure Statement was conditionally approved by the Bankruptcy Court through the entry of the Disclosure Statement Approval Order and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, and operations, (b) a summary of significant events which have occurred to date in this Reorganization Case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure

Statement and any exhibits and schedules and documents attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of the Plan. **All Holders of Claims against and Equity Interests in the Debtor entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.** No materials other than the Disclosure Statement and any exhibits and schedules attached to or referenced in the Disclosure Statement have been approved by the Bankruptcy Court or the Debtor for use in soliciting acceptances or rejections of the Plan.

In summary, but subject to more specific details provided herein, the Plan provides for distributions to Creditors with Allowed Claims pursuant to a classic stand-alone plan. Holders of Secured Claims will receive payment of the agreed upon amount of their Allowed Claims pursuant to terms set forth in Article 5 of the Plan and Unsecured Creditors will receive distributions over five (5) years. Treatment of Assumed Restructured Leases is set forth in Article 7 of the Plan. Treatment of Administrative Expense Claims, including for Rejected Leases, is set forth in Article 3 of the Plan. It is anticipated that distributions will be funded from cash received from continued business operations.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 13 of the Plan, the Debtor expressly reserves the right to alter, after notice and a hearing; amend; modify; revoke; or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF EQUITY INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ALL PERSONS OR ENTITIES SHOULD EVALUATE THE PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

# Article 1
## DEFINED TERMS

As used in the Plan, the following terms, which appear in this Plan as capitalized terms, will have the meanings set forth below:

**1.01** ***"Administrative Expense"*** means—

(a) any cost or expense of administration of the Reorganization Case that is allowed under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Case on or before the applicable Administrative Expense Claims Bar Date, including—

(1) any actual and necessary costs and expenses of preserving the Estate or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

(2) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business;

(3) any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent allowed by a Final Order of the Bankruptcy Court;

(4) any Claim granted administrative-expense priority status by a Final Order of the Bankruptcy Court;

(5) any Claim by a Governmental Unit for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Postpetition; and

(6) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court);

(b) any superpriority Claim;

(c) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911–1930; and

(d) any and all other costs or expenses of administration of the Reorganization Case that are allowed by Final Order of the Bankruptcy Court.

The terms "Administrative Expense" and "Administrative Expense Claim" do not include any Priority Tax Claim, any Secured Claim premised upon ad valorem taxes, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims designated in Classes under the Plan.

**1.02** ***"Administrative Expense Claim"*** means any Claim for the payment of an Administrative Expense. The terms "Administrative Expense(s)," "Administrative Claim(s)," and "Administrative Expense Claim(s)" may be used interchangeably in this Plan.

**1.03** ***"Administrative Expense Claims Bar Date"*** means the date established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim; provided, however, that (a) unless otherwise ordered by the Bankruptcy Court, the Administrative Expense Claims Bar Date for the filing by any Professional of a final application for services rendered or reimbursement for expenses incurred through and including the Effective Date shall be no later than sixty (60) days after the Effective Date, and (b) to the extent the Bankruptcy Court has entered an order establishing a different and specific deadline for a Creditor or other party in interest to file an Administrative Expense Claim, the date set forth in such order shall be deemed to be the Administrative Expense Claims Bar Date as to such Creditor or other party in interest.

**1.04** ***"Affiliate"*** has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.05** ***"Allowed Amount"*** means the dollar amount in which a Claim is Allowed.

**1.06** ***"Allowed Claim"*** means a Claim or that portion of a Claim that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed). "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**1.07** ***"Allowed Class . . . Claim"*** means an Allowed Claim in the particular Class(es) or categories described in the Plan.

**1.08** ***"Assets"*** means any of the Property or assets of any kind, whether real, personal, tangible, or intangible, whether previously owned, now existing or hereafter acquired or arising and wherever located and any interest of any kind therein.

**1.09** ***"Assumed Contract"*** means any Prepetition executory contract or unexpired real or personal property lease assumed by the Debtor during the Reorganization Case pursuant to a Final Order of the Bankruptcy Court.

**1.10** **"*Assumed Restructured Leases*"** has the meaning ascribed to such term in Article 7.01 of the Plan.

**1.11** ***"Avoidance Actions"*** means any claim or cause of action arising under any provision of Chapter 5 of the Bankruptcy Code.

**1.12** ***"Ballot"*** means the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Equity Interests entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.13** ***"Bankruptcy Code"*** means Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*), as in effect on the Petition Date, together with all amendments and modifications to the Bankruptcy Code that were subsequently made applicable to the Reorganization Case.

**1.14** ***"Bankruptcy Court"*** means the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Reorganization Case.

**1.15** ***"Bankruptcy Rules"*** means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (S.D. Fla. L.B.R.), as in effect on the Petition Date, together with all amendments and modifications to the Rules that were subsequently made applicable to the Reorganization Case.

**1.16** ***"Bar Date"*** means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against, or proofs of Equity Interest in, the Debtor, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided, however, that, when used in the Plan, the term "Bar Date" will not include the Administrative Expense Claims Bar Date. Unless otherwise specified by Final Order of the Bankruptcy Court, the Bar Date means September 11, 2025 (as fixed by the Notice of Chapter 11 Bankruptcy Case entered as Doc. No. 6).

**1.17** ***"Business Day"*** means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Florida are required or authorized to close by law.

**1.18** ***"Cash"*** means cash, cash equivalents, and other readily marketable direct obligations of the United States of America, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful

currency of the United States of America, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtor drawn on a domestic bank.

**1.19** ***"Causes of Action"*** means any and all of the Estate's and the Debtor's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including all Avoidance Actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including claims of the type referred to in the Disclosure Statement; provided, however, that, when used in the Plan, the term "Causes of Action" does not include any Claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, charges, costs, Debts, indebtedness, or Liabilities released or waived pursuant an order of the Bankruptcy Court. When used in the Plan, the term "Causes of Action" will also specifically include any claims, demands, rights, and causes of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim or Equity Interest) on a derivative or other basis. Some of the Causes of Action are described in further detail in the Disclosure Statement. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement. The Reorganized Debtor will not be estopped or precluded under any theory from pursuing the Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

**1.20** ***"Claim"*** has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise.

**1.21** ***"Class"*** means a category of Claims or Equity Interests classified together as described in the Plan.

**1.22** ***"Clerk"*** means the Clerk of the Bankruptcy Court.

**1.23** ***"Confirmation"*** or ***"Confirmation of the Plan"*** means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**1.24** ***"Confirmation Date"*** means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**1.25** ***"Confirmation Hearing"*** means the hearing(s), which may be continued by the Bankruptcy Court from time to time, to be held before the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code in which the Debtor will seek Confirmation of the Plan.

**1.26** ***"Confirmation Order"*** means the order of the Bankruptcy Court in the Reorganization Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtor, and will include any amendments, supplements or modifications thereto made with the consent of the Debtor.

**1.27** ***"Creditor"*** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims, and Unsecured Claims.

**1.28** ***"Cure Claim"*** means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or nonmonetary) arising from, relating to, or in connection with the assumption by the Debtor of any Assumed Contract.

**1.29** ***"Debt"*** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**1.30** ***"Debtor"*** means Cinemaworld of Florida, Inc., the Debtor in the Reorganization Case.

**1.31** ***"Debtor in Possession"*** means the Debtor as a debtor in possession in the Reorganization Case.

**1.32** ***"Disallowed Claim"*** means any Claim that has been disallowed by a Bankruptcy Court order that has not been stayed pending appeal.

**1.33** ***"Disclosure Statement"*** means the Debtor's Disclosure Statement, including all attached exhibits, appendices, and schedules, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Reorganization Case and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

**1.34** ***"Disclosure Statement Approval Order"*** means the Order Conditionally Approving Disclosure Statement, Fixing Time to File Objections to the Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of the Plan, and Setting Deadlines with Respect to Confirmation Hearing, entered in the Bankruptcy Case.

**1.35** ***"Disputed Claim"*** means—

(a) any Claim (other than a Disallowed Claim) that has not been Allowed by an order of the Bankruptcy Court as to which—

(1) a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, and

(2) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been

(A) withdrawn,

(B) overruled or denied by an order of the Bankruptcy Court, or

(C) sustained by an order of the Bankruptcy Court.

(b) a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if—

(1) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules,

(2) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules,

(3) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated,

(4) no corresponding Claim has been scheduled in the Schedules, or

(5) the Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect of the Claim.

(c) to the extent that an objection relates to the allowance of only a part of a Claim, the Claim to the extent of the objection, or

(d) to the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, the amount specified in the Proof of Claim that is in excess of the amount of the Claim as scheduled.

**1.36** ***"Distribution"*** means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

**1.37** ***"Distribution Date"*** means the date distributions of Cash to a Creditor on account of an Allowed Claim pursuant to terms of the Plan commence under the Plan.

**1.38** ***"Docket"*** means the docket in the Reorganization Case maintained by the Clerk.

**1.39** ***"Doc. No."*** means the number of the referenced document reflected on the Docket.

**1.40** ***"Effective Date"*** means and will occur on the first Business Day of the calendar month following the Confirmation Date, so long as all of the conditions precedent to the occurrence of the Effective Date contained in Article 10 of the Plan have been satisfied (as determined by the Debtor) or waived by the Debtor as provided in Section 10.03 of the Plan.

**1.41** ***"Entity"*** has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.42** ***"Equity Interests"*** means the interests in the Debtor held by all Holders of existing common stock or other similar ownership interests in the Debtor, including any and all options, warrants, or similar instruments for the acquisition of shares of common stock, and any and all

rights to subscribe to or convert into shares of such securities, whether or not such common stock is certificated.

**1.43** ***"Estate"*** means the bankruptcy estate created for the Debtor under Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Case.

**1.44** ***"Estimation Hearing"*** means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**1.45** ***"Exculpated Parties"*** has the meaning ascribed to such term in Section 11.03 of the Plan.

**1.46** ***"Final Decree"*** means the final decree for the Bankruptcy Case entered by the Bankruptcy Court after the Effective Date pursuant to Bankruptcy Rule 3022.

**1.47** ***"Final Decree Date"*** means the date on which a Final Decree has been entered on the Docket closing the Reorganization Case.

**1.48** ***"Final Order"*** means—

(a) an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Reorganization Case for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which—

(1) no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

(2) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(b) a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

**1.49** ***"Governmental Unit"*** has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

**1.50** "***Guarantor***" means any Person that is a guarantor under a contract, lease, or agreement. For the avoidance of doubt, the term "Guarantor" includes Richard N. Starr, Sr.

**1.51** ***"Holder"*** means—

(a) as to any Claim—

(1) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

(2) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court; or

(3) if the owner or holder of such Claim has transferred the Claim to a third party, advised the Debtor or Reorganized Debtor in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(4) as to any Equity Interests, the record owner or holder of such Equity Interests as shown on the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court.

**1.52** ***"Impaired"*** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.53** ***"Liabilities"*** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any Affiliate, subsidiary, Guarantor, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any Affiliate, subsidiary, Guarantor, predecessor, successor or assign thereof, any Assets of the Debtor, the business or operations of the Debtor, the Reorganization Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include any obligation of the Debtor or the Reorganized Debtor expressly set forth in the Plan.

**1.54** ***"Lien"*** means, with respect to any Asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Asset or Property, whether voluntary or involuntary and whether arising by law, contract, judgment, or otherwise.

**1.55** ***"Local Rules"*** means the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

**1.56** "***Melbourne Property***" has the meaning ascribed to such term in Section 5.06 of the Plan

**1.57** ***"Person"*** means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**1.58** ***"Petition Date"*** means July 3, 2025, the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**1.59** ***"Plan," "the Plan,"*** or ***"this Plan"*** means this *Plan of Reorganization of Cinemaworld of Florida, Inc. under Chapter 11 of the Bankruptcy Code*, dated as of the date first set forth on the title page (together with all Exhibits to the Plan), as same may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**1.60** ***"Plan Documents"*** means all documents that aid in effectuating the Plan, including without limitation all documents filed with the Bankruptcy Court at or before the Confirmation Hearing and the Confirmation Order.

**1.61** ***"Post-confirmation"*** means arising or accruing on or after the Confirmation Date.

**1.62** ***"Postpetition"*** means arising or accruing on or after the Petition Date and before the Effective Date.

**1.63** ***"Prepetition"*** means arising or accruing prior to the Petition Date.

**1.64** ***"Priority Claim"*** means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense, Priority Tax Claim, Secured Claim, or Unsecured Claim.

**1.65** ***"Priority Tax Claim"*** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**1.66** ***"Pro Rata Share"*** means, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims in such Class, all determined as of the applicable Distribution Date. When used in reference to the Unsecured Creditor Plan Distribution, "Pro Rata Share" means a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims in Class 13 determined as of the applicable Distribution Date.

**1.67** ***"Professional"*** means any professional employed in the Reorganization Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

**1.68** ***"Proof of Claim"*** means a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

**1.69** ***"Property"*** means any property or asset of any kind in which the Debtor or the Estate holds an interest, whether real, personal or mixed, tangible or intangible, whether now owned or hereafter acquired or arising, and wherever located, and any interest of any kind in such property or asset.

**1.70** "***Rejected Leases***" has the meaning ascribed to such term in Article 7.04 of the Plan.

**1.71** ***"Reorganization Case"*** means the case commenced in the Bankruptcy Court by the Debtor on the Petition Date as *In re Cinemaworld of Florida, Inc.,* bearing Case No. 25-17693-MAM.

**1.72** ***"Reorganized Debtor"*** means Cinemaworld of Florida, Inc. on and after the Effective Date of the Plan.

**1.73** ***"Rhode Island Location"*** has the meaning ascribed to such term in Article 5.06 of the Plan.

**1.74** ***"Rules"*** means the Bankruptcy Rules.

**1.75** ***"Schedules"*** means, collectively, the Schedules and Statement of Financial Affairs filed by the Debtor in the Reorganization Case pursuant to Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.76** ***"Secured Claim"*** means any Claim that is—

(a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

(b) subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (a) and (b) of this section, only to the extent of the Estate's interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim.

**1.77** ***"Secured Creditor"*** means any Creditor holding a Secured Claim.

**1.78** ***"Secured Tax Claim"*** means a Secured Claim of a Governmental Unit for Prepetition taxes

**1.79** ***"Stichter Riedel"*** means Stichter, Riedel, Blain & Postler, P.A., of Tampa, Florida, in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtor.

**1.80** ***"Tax Collector"*** means with respect to each county in which the Debtor conducted business or owned property, the duly elected Tax Collector for that county.

**1.81** ***"Unimpaired Claim"*** means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.82** ***"United States Trustee"*** means the Office of the United States Trustee for the Southern District of Florida.

**1.83** ***"Unsecured Claim"*** means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estate's interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.84** ***"Unsecured Creditor"*** means any Creditor holding an Unsecured Claim.

**1.85** ***"Unsecured Creditor Plan Distribution"*** means the amount of $200,000.00 to be distributed to unsecured creditors on account of their Allowed Claims in the manner set forth in Section 5.15 of the Plan.

**1.86** ***"Voting Instructions"*** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

## Article 2

### CONTROLLING LAW AND RULES OF CONSTRUCTION

**2.01** ***Reference to Bankruptcy Code and Bankruptcy Rules.*** Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. In the instance of a conflict or ambiguity, the Bankruptcy Code or the Bankruptcy Rules, as applicable, will control.

**2.02** ***Rules of Construction.*** For purposes of the Plan, the following rules of construction will apply:

(a) Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural.

(b) Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document will be substantially in such form or substantially on such terms and conditions.

(c) Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented.

(d) If the description in the Plan of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit will control.

(e) Unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan.

(f) Unless the context requires otherwise, the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular article or section or subsection of the Plan.

(g) Any phrase containing the term "include" or "including" will mean including without limitation.

(h) All of the Exhibits referred to in the Plan will be deemed incorporated herein by such reference and made a part hereof for all purposes.

(i) The rules of construction set forth in Section 102 of the Bankruptcy Code will apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this Section 2.02 of the Plan.

## Article 3

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

**3.01** ***Non-classification.*** In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth in this Article 3.

**3.02** ***Administrative Expenses***. Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim will be paid (a) on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor, or (c) as otherwise ordered by Final Order of the Bankruptcy Court.

**3.03** ***Administrative Expense Claims for Northern Trust and Clinton Savings Bank***. The treatment accorded to Northern Trust and Clinton Savings Bank is set forth in Article 5 of the Plan. Northern Trust Bank (Class 4) and Clinton Savings Bank (Class 5) shall receive no Distribution from the Debtor or the Reorganized Debtor on account of an Administrative Expense Claim.

**3.04** ***Source and Payment of Allowed Administrative Expense Claims for Holders of Rejected Leases.*** Each Holder of an Allowed Rejected Lease Administrative Expense Claim shall be paid its Allowed Administrative Expense Claim by equal monthly payments payable over four (4) months, with the first payment due thirty (30) days after the Effective Date and continuing on the same day for each month thereafter for a period of 4 months. A Holder of an Allowed Rejected Lease Administrative Expense Claim may be paid under such other terms as may be agreed upon by the Holder and the Debtor or the Reorganized Debtor, or as otherwise ordered by Final Order of the Bankruptcy Court.

**3.05** ***Allowed Administrative Expense Claims of Professionals***. Each Professional shall be paid on account of its Allowed Administrative Expense Claim (a) on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Professional and the Debtor or Reorganized Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

**3.06** ***Fees and Charges***. All fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911–1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid on or before the Effective Date. Following the Effective Date, any such fees required pursuant to 28 U.S.C. § 1930(a)(6) arising or accruing from distributions made by the Reorganized Debtor or made under the Plan shall also be paid by the Reorganized Debtor. All such payments to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon the applicable disbursements for the relevant post-confirmation periods and shall be made within the time period set forth in 28 U.S.C. § 1930(a)(6), until the earlier of (i) the closing of the Reorganization Case by the issuance of a Final Order by the Bankruptcy Court on the Final Decree Date, or (ii) the entry of an order by the Bankruptcy Court dismissing the Reorganization Case or converting the Reorganization Case to another chapter under the Bankruptcy Code.

**3.07** ***Applications for Allowance of Administrative Expense Claims.*** All Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state, or local taxes and Holders of Claims under Section 503(b)(9) of the Bankruptcy Code) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date shall be forever barred from asserting such Administrative Expense Claim against the Debtor or the Reorganized Debtor. No Person shall have an Allowed Administrative Expense Claim by virtue of having filed a proof of claim on a Form 410 or otherwise.

**3.08** ***Priority Tax Claims.*** Each Holder of an Allowed Priority Tax Claim will be paid (a) regular, equal quarterly installment Cash payments, over a five (5) year period commencing on the fifteenth (15th) day of the calendar month following the Effective Date and continuing each month thereafter for a period of sixty (60) months, equal to the Allowed amount of such Claim, and to be paid in full no later than sixty (60) months from the Effective Date or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor. Holders of Allowed Priority Tax Claims will receive interest on account of its Allowed Priority Tax Claims to the extent allowed under Section 511 of the Bankruptcy Code; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law.

## Article 4
### DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.01** ***In General.*** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. A Claim or Equity Interest is classified (a) in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.

**4.02** ***Classes.*** For purposes of this Plan, Claims and Equity Interests are classified as follows:

(a) Class 1 consists of all Priority Claims (Non-Tax).

(b) Class 2 consists of Secured Tax Claims of Indian River County Tax Collector.

(c) Class 3 consists of the Secured Claim of Brevard County Tax Collector.

(d) Class 4 consists of the Secured Claims of Northern Trust Bank.

(e) Class 5 consists of the Secured Claim of Clinton Savings Bank.

(f) Class 6 consists of the Secured Claim of the SBA.

(g) Class 7 consists of the Secured Claim of IPFS.

(h) Class 8 consists of the Secured Claim of Navitas Credit Corp.

(i) Class 9 consists of the Secured Claim of Arsenal Yard.

(j) Class 10 consists of the Secured Claim of Mitsubishi HC Capital America, Inc.

(k) Class 11 consists of the Contingent, Unliquidated, Disputed Claims of Betson Enterprises and DDI Leasing, Inc.

(l) Class 12 consists of all Secured Claims not otherwise classified in the Plan.

(m) Class 13 consists of all General Unsecured Claims not otherwise classified in the Plan.

(n) Class 14 consists of all Equity Interests.

## Article 5

### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**5.01** ***In General.*** Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever.

**5.02** ***Unclassified Claims***. Each Holder of an Allowed Administrative Expense Claim or an Allowed Priority Tax Claim will receive the treatment set forth in Article 3 of the Plan.

**5.03** ***Class 1: Priority Claims (Non-Tax).*** Each Holder of an Allowed Priority Claim will receive (a) no later than sixty (60) days from the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by the Holder of such Allowed Priority Claim and the Debtor or the Reorganized Debtor, or (c) as otherwise ordered by Final Order. There are two filed priority claims (Claim No. 27 by AC JV, LLC and Claim No. 22 by Vistar) with an approximate total of $25,873.00.

Class 1 is Unimpaired. Each Holder of a Priority Claim in Class 1 is presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

**5.04** ***Class 2: Secured Tax Claims of Indian River County Tax Collector.*** Class 2 consists of the Allowed Secured Tax Claims of the Indian River County Tax Collector. The Indian River County Tax Collector has secured claims in the amounts of $1,676.16 and $1,353.99 for 2024 and 2025 tangible taxes, respectively. The Indian River County Tax Collector's Secured Claims shall be Allowed in the amounts of $1,676.16 and $1,353.99, or such other amounts as determined by the Bankruptcy Court or by agreement between the Indian River County Tax Collector and the Debtor or the Reorganized Debtor.

On account of its Allowed Secured Claims, the Indian River County Tax Collector shall be paid, in Cash, the amount of its Allowed Secured Claim not later than 90 days after the Effective Date. The Debtor and Indian River County Tax Collector may agree to any such other terms with respect to the Indian River County Tax Collector's Secured Tax Claims. The Indian River County Tax Collector shall retain its Liens until the amounts of its Allowed Secured Claims are paid in full. The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default.

Any remaining Claims of the Indian River County Tax Collector not provided for in this Class 2 shall receive treatment as a Class 13 General Unsecured Claim.

Class 2 is Impaired and entitled to vote to accept or reject the Plan.

**5.05** ***Class 3: Secured Claim of Brevard County Tax Collector.*** Class 3 consists of the Allowed Secured Tax Claim of the Brevard County Tax Collector. The Brevard County Tax Collector has a secured claim in the amount of $4,005.10 for estimated personal property taxes.

The Brevard County Tax Collector's Secured Claim shall be Allowed in the amount of $4,005.10, or such other amount as determined by the Bankruptcy Court or by agreement between the Brevard County Tax Collector and the Debtor or the Reorganized Debtor.

On account of its Allowed Secured Claim, the Brevard County Tax Collector shall be paid, in Cash, the amount of its Allowed Secured Claim not later than 90 days after the Effective Date. The Debtor and Brevard County Tax Collector may agree to any such other terms with respect to the Brevard County Tax Collector's Secured Tax Claim. The Brevard County Tax Collector shall retain its Lien until the amount of its Allowed Secured Claim is paid in full. The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default.

Any remaining Claim of the Brevard County Tax Collector not provided for in this Class 3 shall receive treatment as a Class 13 General Unsecured Claim.

Class 3 is Impaired and entitled to vote to accept or reject the Plan.

**5.06** ***Class 4: Secured Claims of Northern Trust Bank.*** Class 4 consists of all Allowed Secured Claims of Northern Trust Bank.

I. *Allowed Secured Claim of $250,000.00*. Northern Trust shall have an Allowed Secured Claim in the agreed upon amount of $250,000.00, or such other amount as determined by the Bankruptcy Court, or by further agreement between Northern Trust and the Debtor or the Reorganized Debtor (the "**NT Claim**"). The NT Claim is secured by the following: eleven (11) movie projectors located at the Vero Beach location; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds) (the "**Movie Projector Assets**"). Northern Trust filed that certain UCC-1 Financing Statement filed on March 27, 2017, assigned filing number 201700714102, with continuation filed on February 1, 2022, assigned filing number 202200325759 (the "**NT UCC**"). The NT UCC shall be amended to reflect the eleven (11) movie projectors at the Vero Beach location, as opposed to the twenty-five reflected in the UCC statement. The NT UCC also includes a description of certain personal property as forth on Exhibit "B" thereto related to the Melbourne Property as set forth on Exhibit "A" thereto (the "**Melbourne Collateral**"); as the Melbourne Property has been sold as described below, the NT UCC shall also be deemed amended to remove the Melbourne Collateral and Exhibits A and B, such that the only collateral securing the NT Claim shall be the Movie Projector Assets. Northern Trust or the Debtor is authorized to file an amendment to the NT UCC to reflect only the Movie Projector Assets as set forth herein, with such amendment to be filed no later than thirty (30) days after the Effective Date.

On account of its NT Claim, Northern Trust shall be paid, in Cash, the amount of $250,000.00 over the course of five (5) years with interest at 4.5%. Beginning on the 15th day of the first month following the Effective Date, and on the 15th day of each month thereafter for the next 60 months, Northern Trust shall receive monthly principal and interest payments of $4,700.00. Northern Trust shall continue to receive payments on the NT Claim until paid in full; provided, however, if prior to the last month's payment, the remaining amount due and owing is less than a full month's payment, then Northern Trust shall be paid only the remaining amount owed.

Upon receipt of payment in full of the NT Claim, Northern Trust shall release its Lien on the Movie Projector Assets and file a UCC-3 termination statement as to the NT UCC. In the event a UCC-3 termination statement is not filed within thirty (30) days of payment in full of the NT Claim, the Debtor or the Reorganized Debtor is authorized to file and record such termination statement. Furthermore, Northern Trust shall release, withdraw, or terminate any other associated Liens (if any).

The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default, unless the pre-petition loan documents provide for a longer cure period in which case such longer cure period shall govern. In the event of a default, the default rate of interest shall be 5%. In the event of a default under the plan treatment or Debtor transfers the Movie Projector Assets without satisfying the NT Claim, NT shall be entitled to enforce its remedies to recover the NT Claim and/or against the Movie Projector Assets under the terms of the security agreement and appliable law.

The Reorganized Debtor may prepay or cause to be prepaid, without penalty, all or any portion of the NT Claim.

Notwithstanding the above, Northern Trust may be paid such other amount and under such other terms as may be agreed upon by Northern Trust and the Debtor or the Reorganized Debtor.

II. *Allowed Secured Claim on Corporate Office*. Northern Trust also holds a first and second mortgage on that certain real property located at 970 16th Place, Vero Beach, Florida 32960 (the "**Corporate Office**") pursuant to (i) that certain First Amended, Restated, and Renewal Term Note dated October 9, 2012, as may be amended, in the original principal amount of $312,000.00 (loan no. 1050244624-10248; first mortgage) ("**Facility E Loan**") and (ii) that certain Second Amended, Restated, and Renewal Term Note dated October 15, 2012, as may be amended, in the original principal amount of $150,520.57 (loan no. 1050244624-10249; second mortgage) ("**Facility F Loan**" and together with the Facility E Loan, hereinafter referred to as the "**Corporate Office Loans**"). While R2 Leasing, LLC owns the Corporate Office, both the Debtor and R2 Leasing, LLC are borrowers on the Corporate Office Loans. The approximate amount due on the Corporate Office Loans is $250,000.00.

Northern Trust shall continue to receive payments on the Corporate Office Loans on such date(s) and in such amounts as set forth in the loan documents for the Corporate Office Loans until the respective amounts under the Corporate Office Loans are paid in full; provided, however, if prior to the last month's payment, the remaining amount due and owing is less than a full month's payment, then Northern Trust shall be paid only the remaining amount owed.

Northern Trust shall retain its mortgages on the Corporate Office until the respective loan amounts associated with the first mortgage and the second mortgage are paid in full. As to the Corporate Office Loans, Northern Trust filed that certain UCC-1 Financing Statement on October 13, 2008, assigned filing number 200809345976, with continuations filed on August 21, 2013, assigned filing number 201309690128, on August 18, 2018, assigned filing number 201806377517, and on September 1, 2023, assigned filing number 202302414045 (the "**Corporate Office UCC**"). Upon payment in full of the amount associated with the first mortgage, Northern Trust shall record a satisfaction of mortgage within the time period required by applicable

law. In addition, upon payment in full of the amount associated with the second mortgage, Northern Trust shall record a satisfaction of mortgage within the time period required by applicable law. Upon receipt of payment in full of the Corporate Office Loans, Northern Trust shall release its Lien on the assets as set forth in the Corporate Office UCC and file a UCC-3 termination statement as to the Corporate Office UCC. In the event a UCC-3 termination statement is not filed within thirty (30) days of payment in full, the Debtor or the Reorganized Debtor is authorized to file and record such termination statement. Furthermore, Northern Trust shall release, withdraw, or terminate any other associated liens (if any).

The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default, unless the pre-petition loan documents provide for a longer cure period in which case such longer cure period shall govern.

The Reorganized Debtor may prepay or cause to be prepaid, without penalty, all or any portion of the Corporate Office Loans.

Notwithstanding the above, Northern Trust may be paid such other amount and under such other terms as may be agreed upon by Northern Trust and the Debtor or the Reorganized Debtor.

III. *Proofs of Claims*: Northern Trust filed the following Proof of Claims (collectively, the "**Filed Claims**"): (i) Claim No. 15 in the amount of $9,477,888.48 ((regarding loan no. 3801890155-40001; second leasehold mortgage on the Rhode Island Location (defined below)) ("**Facility D Loan**")), (ii) Claim No. 17 in the amount of $550,898.79 (regarding loan no. 1050226254-10050) ("**Facility A Loan**"), (iii) Claim No. 18 in the amount of $376,311.69 as of August 20, 2025 (regarding loan no. 3801720683-40001; first mortgage on Melbourne Property) ("**Facility B Loan**"), (iv) Claim No. 19 in the amount of $507,891.03 as of August 20, 2025 (regarding loan no. 3801720683-40002; second mortgage on Melbourne Property) ("**Facility C Loan**")), and (v) Claim No. 20 in the amount of $137,538.90 as of August 20, 2025 (loan no. ending 0683-3; third mortgage on the Melbourne Property) ("**Third Mortgage Loan**" and together with Facility D Loan, Facility A Loan, Facility B Loan, and Facility C Loan, hereinafter referred to collectively as the "**Filed Claim Loans**"). In addition, Northern Trust filed Claim No. 21 in the amount of $9,477,888.48, which is a duplicate of Claim No. 15.

On July 23, 2025, the Bankruptcy Court, pursuant to its Order (Doc. No. 41), authorized the Debtor to sell that certain real property located at 4345 West New Haven Avenue, Melbourne, Florida (the "**Melbourne Property**"). The sale of the Melbourne Property was consummated on July 29, 2025, with Northern Trust receiving on account of its mortgages and Liens, which were satisfied and released, sale proceeds in the amount of $8,691,222.72. On account of the sale of the Melbourne Property, Northern Trust's first, second, and third mortgages on the Melbourne Property (as referenced in Claim Nos. 18, 19, and 20) were released. As noted above, Northern Trust also held a second leasehold mortgage on premises located at the Lincoln Mall a/k/a Lincoln Commons, 622 George Washington Hwy, Lincoln, Rhode Island (the "**Rhode Island Location**"), which was subject to a lease. The lease has been rejected by the Debtor and the premises has been surrendered to the landlord.

As the Northern Trust's Filed Claims and Filed Claim Loans are unsecured, the Filed

Claims shall receive treatment as Class 13 General Unsecured Claims.

As Claim No. 21 is duplicative of Claim No. 15, Northern Trust shall receive no distribution on account of Claim No. 21.

IV. Class 4 is Impaired and entitled to vote to accept or reject the Plan.

**5.07** ***Class 5: Secured Claim of Clinton Savings Bank.*** Class 5 consists of the Secured Claim of Clinton Savings Bank. Clinton Savings Bank asserts a Secured Claim in the amount of $4,732,020.04. The collateral for this loan is a leasehold mortgage interest in the Rhode Island Location and personal property of the Debtor located therein. Clinton Savings Bank has been granted stay relief to liquidate its collateral and shall receive no further distribution on account of its Secured Claim.

Clinton Savings Bank filed that certain UCC-1 Financing Statement on April 28, 2017, assigned filing number 201701060653, with continuation filed on March 10, 2022. Clinton Savings Bank shall file a UCC-3 termination statement of said Lien on the Effective Date. In the event a UCC-3 termination statement is not filed within thirty (30) days of the Effective Date, the Debtor or the Reorganized Debtor is authorized to file such termination statement.

Any remaining Claim of Clinton Savings Bank not provided for in this Class 5 shall receive treatment as a Class 13 General Unsecured Claim.

Class 5 is Impaired and entitled to vote to accept or reject the Plan.

**5.08** ***Class 6: Secured Claim of the SBA.*** Class 6 consists of the Allowed Secured Claim of the U.S. Small Business Administration (the "**SBA**"). The SBA filed Claim No. 39 in the amount of $508,683.49 (the "**SBA Secured Claim**"). SBA filed that certain UCC-1 Financing Statement on June 3, 2020, assigned filing number 202001983830, with continuation filed on May 23, 2025, assigned filing number 202501495045, asserting a Lien on the Debtor's tangible and intangible personal property (the "**SBA UCC**").

The SBA Secured Claim will be paid as follows:

a) The total amount of $508,683.49 will be paid in accordance with the current terms of the loan, including the term of the loan expiring on May 26, 2050.

b) Equal monthly payments (the "**SBA Monthly Payment**") in the amount of $1,772.41 will be paid to SBA commencing thirty (30) days after the Effective Date and shall continue each month thereafter, until the SBA Secured Claim is paid in full; provided, however, if prior to the last month's payment, the remaining amount due and owing is less than a full month's payment, then the Debtor or the Reorganized Debtor shall only pay the remaining amount owed.

c) No interest shall be charged or due and owing by the Debtor or the Reorganized Debtor.

d) The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default, unless the pre-petition loan documents provide for a longer cure period in which case such longer cure period shall govern.

Notwithstanding the above, SBA may be paid such other amount and under such other terms as may be agreed upon by SBA and the Debtor or the Reorganized Debtor. The Reorganized Debtor may prepay or cause to be prepaid, without penalty, all or any portion of the SBA Secured Claim.

With respect to its SBA Secured Claim, SBA will retain its Lien until the claim has been paid in full. Upon receipt of payment in full of the SBA Secured Claim, SBA shall immediately release its Lien on the Debtor's assets and file a UCC-3 termination as to the SBA UCC. In the event a UCC-3 termination is not filed within thirty (30) days of payment in full, the Debtor or the Reorganized Debtor is authorized to file and record such termination.

As long as the Debtor is not in default with respect to its payments to the SBA on its SBA Secured Claim, the SBA shall not pursue collection from any guarantor(s) with respect to any amounts owed by the Debtor or the Reorganized Debtor.

Any remaining Claim of the SBA not provided for in this Class 6 shall receive treatment as a Class 13 General Unsecured Claim.

Class 6 is Impaired and entitled to vote to accept or reject the Plan.

**5.09** ***Class 7: Secured Claim of IPFS.*** Class 7 consists of the Allowed Secured Claim of IPFS. IPFS asserts a Secured Claim in the amount of $177,790.42. IPFS has been receiving payments during the course of this Chapter 11 case and will continue to receive payments in accordance with that certain agreement between the Debtor and IPFS.

Any remaining Claim of IPFS not provided for in this Class 7 shall receive treatment as a Class 13 General Unsecured Claim.

Class 7 is Impaired and entitled to vote to accept or reject the Plan.

**5.10** ***Class 8: Secured Claim of Navitas Credit Corp.*** Class 8 consists of the Allowed Secured Claim of Navitas Credit Corp. ("**Navitas**"). Navitas filed Claim No. 29 in the secured amount of Eighteen Thousand and NO/100 Dollars ($18,000.00) (the "**Navitas Secured Claim**") for that certain audio visual equipment set forth in Proforma Invoice #47873-1 dated 6/9/22, Proforma Invoice #47861-1 dated 6/8/22, and Proforma Invoice #47862-1 dated 6/8/22 (the "**Invoices**"), each attached to Claim No. 29. Navitas filed that certain UCC-1 Financing Statement on July 26, 2022, assigned filing number 202202413552, asserting a lien on the audio visual equipment set forth in the Invoices, copies of which are attached to the financing statement.

Navitas' Secured Claim shall be Allowed in the amount of $18,000.00, less credit for payments from the Debtor, or such other amount as determined by the Bankruptcy Court, or by agreement between Navitas and the Debtor or the Reorganized Debtor.

Equal monthly payments in the amount of $750.00 will be paid to Navitas over a two (2) year period commencing on the fifteenth (15th) day of the calendar month following the Effective Date, and continuing each month thereafter for a period of twenty-four (24) months, until the Navitas Secured Claim is paid in full; provided, however, if prior to the last month's payment, the remaining amount due and owing is less than a full month's payment, then the Debtor shall only pay the remaining amount owed. No interest shall be charged or due and owing by the Debtor.

The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default.

Notwithstanding the above, Navitas may be paid such other amount and under such other terms as may be agreed upon by Navitas and the Debtor or the Reorganized Debtor.

The Reorganized Debtor may prepay or cause to be prepaid, without penalty, all or any portion of the Navitas Secured Claim.

With respect to its Navitas Secured Claim, Navitas will retain its lien until the secured claim has been paid in full. Upon receipt of payment in full of the Navitas Secured Claim, Navitas shall immediately release its lien on the collateral and file a UCC-3 termination of said lien. In the event a UCC-3 termination is not filed within thirty (30) days of payment in full, the Debtor or Reorganized Debtor is authorized to file such termination.

Any remaining Claim of Navitas not provided for in this Class 8 shall receive treatment as a Class 13 General Unsecured Claim.

Class 8 is Impaired and entitled to vote to accept or reject the Plan.

**5.11** ***Class 9: Secured Claim of Arsenal Yard***. Class 9 consists the Secured Claim of Arsenal Yard. Arsenal Yard asserts a Secured Claim in the amount of $1,109,458.43. The Debtor and Arsenal Yards have agreed to amended terms on the real property lease as set forth in Article 7 below. Arsenal Yards shall have no claim and receive no distribution other than as set forth in Article 7 below.

Class 9 is Impaired and entitled to vote to accept or reject the Plan.

**5.12** ***Class 10: Secured Claim of Mitsubishi HC Capital America, Inc.*** Class 10 consists of the Allowed Secured Claim of Mitsubishi HC Capital America, Inc. ("**Mitsubishi**"). Mitsubishi filed that certain UCC-1 Financing Statement on October 24, 2022, assigned filing number 202203407879, with respect to Equipment Finance Agreement No. 7843800-001.

Mitsubishi's Secured Claim shall be Allowed in the amount of $10,000.00, or such other amount as determined by the Bankruptcy Court, or by agreement between Mitsubishi and the Debtor or the Reorganized Debtor.

Equal monthly payments in the amount of $166.67 will be paid to Navitas over a five (5) year period commencing on the fifteenth (15th) day of the calendar month following the Effective Date, and continuing each month thereafter for a period of sixty (60) months, until the Mitsubishi Secured Claim is paid in full; provided, however, if prior to the last month's payment, the

remaining amount due and owing is less than a full month's payment, then the Debtor shall only pay the remaining amount owed. No interest shall be charged or due and owing by the Debtor.

The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default.

Notwithstanding the above, Mitsubishi may be paid such other amount and under such other terms as may be agreed upon by Mitsubishi and the Debtor or the Reorganized Debtor.

The Reorganized Debtor may prepay or cause to be prepaid, without penalty, all or any portion of the Mitsubishi Secured Claim.

With respect to its Mitsubishi Secured Claim, Mitsubishi will retain its lien until the secured claim has been paid in full. Upon receipt of payment in full of the Mitsubishi Secured Claim, Mitsubishi shall immediately release its lien on the collateral and file a UCC-3 termination of said lien. In the event a UCC-3 termination is not filed within thirty (30) days of payment in full, the Debtor or Reorganized Debtor is authorized to file such termination.

Any remaining Claim of Mitsubishi not provided for in this Class 10 shall receive treatment as a Class 13 General Unsecured Claim.

Class 10 is Impaired and is entitled to vote to accept or reject the Plan.

**5.13** ***Class 11: Contingent, Unliquidated, Disputed Claims of Betson Enterprise, and DDI Leasing, Inc.*** Class 11 consists of the contingent, unliquidated, disputed claims of Betson Enterprises, Division of H-Betti Industries, Inc. ("**Betson**") and DDI Leasing, Inc. ("**DDI**").

The Debtor listed each of Beston and DDI (the "**DCU Creditors**") as contingent, unliquidated, and/or disputed. Prior to the Petition Date, each of the DCU Creditors filed a UCC-1 financing statement (collectively, the "**DCU Creditor UCCs**") as follows: Betson filed that certain UCC-1 Financing Statement on April 6, 2021, assigned filing number 202106685786, with respect to Account 812701, Contract 25750; and DDI filed that certain UCC-1 financing statement ono March 14, 2022, assigned filing number 202200812527, with respect to Lease Schedule Number TSM05642A to Master Agreement dated February 16, 2022.

Neither Beston nor DDI filed a proof of claim. Pursuant to 11 U.S.C. §§§ 501, 502, and 1111(a) and Federal Rule of Bankruptcy Procedure 3003(c)(2), neither Beston nor DDI has an allowed claim and neither Beston nor DDI shall receive any distribution or payment from the Debtor or the Reorganized Debtor.

As of the Effective Date, the Debtor or the Reorganized Debtor shall be authorized to file and record UCC-3 terminations as to each of the DCU Creditor UCCs.

Class 11 is Impaired and is entitled to vote to accept or reject the Plan.

**5.14** ***Class 12: Secured Claims Not Otherwise Classified.*** Class 12 consists of all Allowed Secured Claims not otherwise classified in the Plan. Each Holder of an Allowed Secured Claim in Class 12 will receive either the collateral securing such Allowed Claim or the value of

such collateral within 90 days following the later of the Effective Date or the date that such collateral is valued pursuant to a Final Order. The Debtor and Holder of such Allowed Secured Claim in Class 12 may agree to any such other terms with respect to the Allowed Secured Claim.

Class 12 is Unimpaired and is not entitled to vote to accept or reject the Plan.

**5.15** ***Class 13: General Unsecured Claims.*** Class 13 consists of all Allowed Unsecured Claims against the Debtor.

Each Holder of an Allowed Unsecured Claim shall receive its *Pro Rata* Share of the Unsecured Creditor Plan Distribution ($200,000.00) in full satisfaction of its Unsecured Claim. The Unsecured Creditor Plan Distribution shall be made by the Debtor or the Reorganized Debtor to Holders of Allowed Unsecured Claims in twenty (20) quarterly payments of $10,000.00 beginning on the last day of Q4 2026 (December 31, 2026), and thereafter on the last business day of the next nineteen (19) calendar quarters. Insider claims shall be subordinated to non-insider Allowed Unsecured Claims until payment in full of the non-insider Allowed Unsecured Claims as provided in this Section 5.14.

The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default, unless the pre-petition loan documents provide for a longer cure period in which case such longer cure period shall govern

This Class does not include any claim scheduled by the Debtor to be disputed, contingent, or unliquidated and for which no proof of claim was timely filed (the "DCU Claims"), unless such claim is allowed by a non-appealable final order; pursuant to 11 U.S.C. §§§ 501, 502, and 1111(a) and Federal Rule of Bankruptcy Procedure 3003(c)(2), therefore, no distribution shall be made on the DCU Claims.

Class 13 is Impaired and is entitled to vote to accept or reject the Plan.

**5.16** ***Class 14: Equity Interests.*** Class 14 comprises all Equity Interests in the Debtor. Existing Holders of Equity Interests shall retain their Equity Interests in the Reorganized Debtor; provided, however, each Holder of an Allowed Equity Interests shall receive no distribution on account of its Allowed Equity Interests until all other Allowed Claims have been paid in full.

Class 14 is Unimpaired and is not entitled to vote to accept or reject the Plan.

## Article 6

### ACCEPTANCE OR REJECTION OF PLAN

**6.01** ***Each Impaired Class Entitled to Vote Separately.*** The Holders of Claims in each Impaired Class of Claims will be entitled to vote separately to accept or reject the Plan.

**6.02** ***Acceptance by Impaired Classes***. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan

and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (½) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Equity Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

**6.03** ***Presumed Acceptance of Plan.*** Under Section 1126(f) of the Bankruptcy Code, the Holders of Claims in Unimpaired Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained in the Plan or otherwise will affect the Debtor's or the Reorganized Debtor's rights and legal and equitable claims or defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

## Article 7
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** ***Assumption and Rejection of Executory Contracts and Unexpired Leases.*** The Debtor proposes under this Plan, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, to assume the executory contracts and unexpired leases identified in the attached ***Exhibit A*** (the "Leases"), as of the Effective Date. The lease with Arsenal Yards and with Luria Plaza, LLC shall be amended upon the terms and conditions set forth as to each lessor in Article 7.2 and Article 7.3 below with respect to its applicable lease, which shall constitute a restructuring of such leases and provide for treatment of any Cure Claim with respect to such leases (the leases, as restructured pursuant to Article 7.2 and Article 7.3, the "Assumed Restructured Leases"). Each lessor agrees that the treatment contained in the Assumed Restructured Leases constitutes prompt cure of its Cure Claim with respect to its lease.

The Debtor shall assume any unexpired lease or sub-lease with any Affiliate, sister company, or related company. The Debtor and an Affiliate, sister company, or related company may amend, supplement, or restructure the lease or sub-lease pursuant to such other terms as may be agreed upon by the Debtor or the Reorganized Debtor and an Affiliate, sister company, or related company.

Notwithstanding the foregoing in this Article 7.1, the Debtor reserves the right, on or prior to the Confirmation Date, to amend the Plan to identify any executory contract or unexpired lease which is to be rejected or assumed. The Debtor shall provide notice of any addition or deletion of executory contracts or unexpired leases to the Plan to the parties to the affected executory contracts and unexpired leases. The listing of a document shall not constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor has any liability thereunder. The Debtor reserves the right to file motions to assume or reject any unexpired lease or executory contract not specifically listed in this Article 7 and related Exhibits.

**7.02** ***Restructured Lease Terms of Arsenal Yards Lease.***

(a) **Arensal Yards Restructured Lease**. Arsenal Yards and Debtor are parties to that certain lease dated January 18, 2018, by and between 615 Arsenal Retail LLC, as landlord, and Debtor, as tenant, with respect to certain leased space located within the development known as Arsenal Yards in Watertown, Massachusetts, specifically at 81 Arsenal Yards Boulevard, Watertown, Massachusetts (the "**Arsenal Location**") and more particularly described in the Lease, said lease as amended by that certain (i) First Amendment to Lease dated April 16, 2018, (ii) Second Amendment to Lease dated October 9, 2020, (iii) Third Amendment to Lease dated August 1, 2021, and (iv) Fourth Amendment to Lease dated as of March 15, 2023, hereinafter referred to as the "**Arsenal Yards Lease**". Arsenal Yards Core Holding, LLC ("**Arsenal Yards**") is the present holder of 615 Arsenal Retail LLC's interest in the Arsenal Yards Lease.

(b) In connection with assumption of the Arsenal Yards Lease, the Debtor and Arsenal Yards shall enter into a Fifth Amendment to Lease (the "**Fifth Amendment to Lease**"), which shall amend the terms and conditions of the Arsenal Yards Lease. The Fifth Amendment to Lease, in form acceptable to the Debtor and Arsenal Yards, will be executed by the parties and become effective upon confirmation of this Plan and the entry of a final order or orders in the Bankruptcy Case (i) confirming a chapter 11 plan of reorganization of Debtor that incorporates and authorizes Debtor to enter into the Fifth Amendment to Lease and take the actions contemplated hereby, and (ii) authorizing Debtor's assumption of the Arsenal Yards Lease, as amended by the Fifth Amendment to Lease, pursuant to Section 365 of the Bankruptcy Code; and the occurrence of all conditions to effectiveness of the Plan.

(c) On April 13, 2023, Arsenal Yards filed that certain UCC-1 financing statement assigned filing number 202300998643 asserting a lien on all personal property located at the Arsenal Location (the "**Arsenal UCC**"). The Fifth Amendment to the Lease will transfer to Arsenal Yards the personal property located at the Arsenal Location for credit against arrearages under the lease which would otherwise need to be paid in Cash upon assumption of the Arsenal Yards Lease, as amended.

(d) Upon assumption of the Arsenal Yards Lease, as amended by the Firth Amendment to Lease and the Plan, any default which may have existed or been declared prior to the Effective Date shall be deemed to have been cured and not exist as of the Effective Date. The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default, unless the Arsenal Yards Lease, as amended by the Firth Amendment to Lease provides for a longer cure period in which case such longer cure period shall govern.

(e) Notwithstanding the above, Arsenal Yards may be paid such other amount and under such other terms as may be agreed upon by Arsenal Yards and the Debtor. In addition, notwithstanding the above, the Debtor reserves the right to amend the treatment of the restructured terms to conform to any terms and conditions required by the Bankruptcy Court or otherwise necessarily to overcome any objections, and such modified terms shall become part of this Plan.

**7.03** ***Restructured Lease Terms of Vero Beach Lease***.

(a) **Luria Plaza, LLC Restructured Lease**. Luria Plaza, LLC ("**Luria**") and Debtor are parties to that certain Shopping Center Lease Agreement dated August 10, 2007, as amended by that certain First Amendment to Lease Agreement dated April 18, 2017 and by that certain Second Amendment to Lease dated March 23, 2022 (the "**Luria Lease**"), by and between Luria Plaza, LLC, as landlord, and Debtor, as tenant, with respect to certain leased space.

(b) In connection with assumption of the Luria Lease, the Debtor and Luria shall enter into a Third Amendment to Lease (the "**Third Amendment to Lease**"), which shall amend the terms and conditions of the Luria Lease. The Third Amendment to Lease, in form acceptable to the Debtor and Luria, will be executed by the parties and become effective upon confirmation of this Plan and the entry of a final order or orders in the Bankruptcy Case (i) confirming a chapter 11 plan of reorganization of Debtor that incorporates and authorizes Debtor to enter into the Third Amendment to Lease and take the actions contemplated hereby, and (ii) authorizing Debtor's assumption of the Luria Lease, as amended by the Third Amendment to Lease, pursuant to Section 365 of the Bankruptcy Code; and the occurrence of all conditions to effectiveness of the Plan.

(c) Upon assumption of the Luria Lease, as amended by the Third Amendment to Lease and the Plan, any default which may have existed or been declared prior to the Effective Date shall be deemed to have been cured and not exist as of the Effective Date. The Reorganized Debtor shall have ten (10) business days after receipt of written notice of default to cure any default, unless the Luria Lease, as amended by the Third Amendment to Lease provides for a longer cure period in which case such longer cure period shall govern.

(d) Notwithstanding the above, Luria may be paid such other amount and under such other terms as may be agreed upon by Luria and the Debtor. In addition, notwithstanding the above, the Debtor reserves the right to amend the treatment of the restructured terms to conform to any terms and conditions required by the Bankruptcy Court or otherwise necessarily to overcome any objections, and such modified terms shall become part of this Plan.

**7.04** ***Rejection of Executory Contracts & Unexpired Leases Not Otherwise Assumed***. Pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, any unexpired lease or executory contract (i) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date, or (iii) that is specifically designated as a contract or lease to be rejected in this Plan as listed on attached ***Exhibit B*** (collectively, and including the Rejected Lessor Leases (as defined below), the "**Rejected Leases**") shall be deemed rejected.

**7.05** ***Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.*** Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy

Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Articles 7.01, 7.02, and 7.03 hereof, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.04 hereof, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtor or the Reorganized Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtor or the Reorganized Debtor of an Assumed Restructured Lease shall be binding upon any and all parties to such agreement as a matter of law, and each such agreement shall be fully enforceable by the Debtor or the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

**7.06** ***Inclusiveness.*** Unless otherwise specified, each executory contract and unexpired lease that is rejected or assumed shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is specifically referenced in this Plan or in a notice of assumption provided under this Plan.

**7.07** ***Damages Arising from Rejection of any Executory Contract or Unexpired Lease.*** Any Claim for damages arising by reason of the rejection of any Rejected Lease (a "**Rejection Claim**") must be filed with the Bankruptcy Court on the earlier of (a) thirty (30) days following the date of any order approving the rejection of such Rejected Lease, or (b) thirty (30) days following the Confirmation Date. Any Rejection Claim must be served upon the Debtor or the Reorganized Debtor or such Rejection Claim shall be forever barred and unenforceable against the Debtor and the Reorganized Debtor. Any party to a Rejected Lease must avail themselves of all commercially reasonable efforts to mitigate damages in connection with the rejection of such Rejected Lease and shall use all commercially reasonable efforts to obtain maximum value in any disposition of the property subject to such Rejected Lease. Any party who files a Rejection Claim shall only assert such portion of the Rejection Claim that is unmitigated by subsequent sale, lease, or disposition of the property subject to such Rejected Lease and after first application of all proceeds to an Allowed Administrative Expense Claim. The Bankruptcy Court shall retain exclusive jurisdiction to determine the amount of any Rejection Claim. All Rejection Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall receive treatment as a Class 13 General Unsecured Claim. Any such Rejection Claims that become Disputed Claims shall be Disputed Claims for purposes of administration of distributions under the Plan to Holders of Allowed Unsecured Claims. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

**7.08** ***Insurance Policies.*** All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. All of the Debtor's insurance policies shall be assumed by the Debtor. Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the Debtor or the Reorganized

Debtor may hold against any Person or Entity, including the insurers under any of the Debtor's insurance policies.

## Article 8

### MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

**8.01** ***Overview.*** The Plan provides, in general, for a restructuring of the Debtor's operations. The Debtor will pay go-forward payments under the Arsenal Yards Restructured Lease and the Luria Plaza, LLC Restructured Lease, each as modified by the terms provided in Article 7 of this Plan, through the continued restructured operations of the Debtor. With respect to other Claims, including Secured Claims, the Plan proposes to pay such Claims under the terms provided in Article 5 of this Plan. The Debtor intends to retain its current management team and has and will continue to implement changes in its business model for more cost-effective operations.

**8.02** ***Continued Corporate Existence; Tax Consequences.*** The Debtor will continue to exist, as the Reorganized Debtor, after the Effective Date as a corporation with all of the powers of a corporation under Florida law and pursuant to its articles of organization or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date. On the Effective Date, title to the Assets of the Estate shall vest in the Reorganized Debtor.

**8.03** ***Management and Executive Officers of the Reorganized Debtor.*** The management of the Debtor will remain the same and shall serve from and after the Effective Date until successors are duly elected or appointed and qualified or until its earlier resignation or removal in accordance with the Debtor's articles of organization and by-laws. Specifically, Richard Starr, Sr. shall continue as the President and Rick Starr, II shall continue as the Execute Vice-President. The Reorganized Debtor shall continue to honor the pre-petition compensation structures for the Debtor's President and manager.

**8.04** ***Corporate Action.*** All matters provided for under the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, or any corporate action to be taken by or required of the Debtor or the Reorganized Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the management of the Debtor or the Reorganized Debtor. From and after the Effective Date, the Reorganized Debtor shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

**8.05** ***Revesting of Property of the Estate in the Reorganized Debtor.*** On the Effective Date, all Property and Assets of the Estate (including the Causes of Action) shall revest in the Reorganized Debtor free and clear of any and all Liens, Debts, obligations, Claims, Liabilities, and all other interests of every kind and nature, and the Confirmation Order shall so provide. With respect to any Liens, Debts, obligations, Claims, or Liabilities, if any Person or entity that has filed financing statements, mortgages, mechanics liens, lis pendens, or other documents or agreements evidencing any Lien, claim, or encumbrance as to any of the Debtor's Assets or Property, has not, as of the Effective Date, delivered to the Debtor or the Reorganized Debtor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

or release of same, then the Debtor or the Reorganized Debtor shall be authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the Person or entity with respect to such Assets and Property. As of the Effective Date, the Reorganized Debtor shall be responsible for the operation of the business, the management of the Assets and Property, the pursuit of Causes of Action, the payment of Allowed Claims, and such other duties imposed by the Plan and the Confirmation Order. All privileges with respect to the Assets and Property of the Debtor's Estate, including the attorney-client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtor.

**8.06** ***Effectuating Documents; Further Transactions.*** The current management of the Debtor or the Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan and the Plan Documents or to otherwise comply with applicable law. With respect to all Secured Claims, to the extent that the Debtor or the Reorganized Debtor retains the collateral subject to such Secured Claims, no financial covenants or other technical defaults will exist post-confirmation; and all defaults shall be subject to reasonable cure provisions of no less than ten (10 business days.

**8.07** ***Exclusivity Period.*** The Debtor shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the Effective Date.

**8.08** ***Section 1146 Exemption.*** Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Assets of, by or in the Debtor, the Reorganized Debtor, its Estate, or the real estate pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**8.09** ***Preservation of Causes of Action.***

(a) On the Effective Date, the Causes of Action shall be vested in the Reorganized Debtor, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by Final Order. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtor states that any party in interest that engaged in business or other transactions with the Debtor Prepetition or that

received payments from the Debtor Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

(b) No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE REORGANIZED DEBTOR. Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Reorganized Debtor does not possess or does not intend to prosecute a particular claim or cause of action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, Claims, and rights of action of the Debtor, whether now known or unknown, whether arising at law or in equity, for the benefit of the Reorganized Debtor and the Debtor's Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

(c) The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

(d) The Reorganized Debtor reserves the right to pursue any or none of the Causes of Action in its sole discretion.

**8.10** ***Retention of Jurisdiction.*** The Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date to, among other things, determine all disputes relating to Claims, Equity Interests and other issues presented by or arising under the Plan. The Bankruptcy Court will also retain jurisdiction under the Plan for any actions brought in connection with the implementation and consummation of the Plan and the transactions contemplated thereby.

## Article 9
## PROVISIONS GOVERNING DISTRIBUTION

**9.01** ***Distributions.*** The Reorganized Debtor shall assume sole responsibility for making the Distributions to Holders of Allowed Claims in the manner set forth in Article 5 of the Plan.

**9.02** ***Unclaimed Distributions.***

(a) If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within 90 days of the date such check was issued, then the Reorganized Debtor will provide written notice to such Holder stating that unless such Holder negotiates such check within 30 days of the date of such notice, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further distributions under the Plan.

(b) If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address (as determined by the address listed in the Schedules, on a proof of claim, or on the most current version of the Court's mailing matrix for the Reorganization Case) for the Holder of such Allowed Claim, and no claim is made to the Reorganized Debtor as to such distribution within 120 days of the return of such distribution, then the amount of Cash attributable to such distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such distribution and will not participate in any further distributions under the Plan.

(c) Any unclaimed distribution described above shall become the property of the Reorganized Debtor.

**9.03** ***Transfers of Claims.*** In the event that the Holder of any Claim transfers such Claim on and after the Effective Date, the Holder shall immediately advise the Reorganized Debtor in writing of such transfer. The Reorganized Debtor will be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim will take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor will be entitled to assume conclusively that the transferee named in such notice will thereafter be vested with all rights and powers of the transferor under the Plan.

**9.04** ***Determination of Claims.***

(a) Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or

unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Reorganized Debtor), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on (i) the Reorganized Debtor and (ii) such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 13 General Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) ninety (90) days following the Effective Date or (b) the date sixty (60) days after the Debtor or Reorganized Debtor receives actual notice of the filing of such Claim.

(b) Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or Reorganized Debtor effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Reorganization Case on behalf of the Holder of a Claim.

(c) Disputed Claims will be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Case, such Claim will be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely filed Proof of Claim, the Debtor or Reorganized Debtor or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings will be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, will be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

**9.05 De Minimis** ***Distributions on Account of Allowed Class 13 Unsecured Claims.*** To avoid the disproportionate expense and inconvenience associated with making *de minimis* distributions, the Reorganized Debtor will not be required to make, and will be excused from making, distributions in amounts of less than twenty-five dollars ($25.00) each to Holders of Allowed Class 13 Claims.

**9.06** ***One Distribution per Holder.*** If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distributions hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

**9.07** ***Effect of Pre-Confirmation Distributions.*** Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor to such Holder hereunder if such full or partial payment was made by the Debtor that would otherwise be required to make a Distribution hereunder. Further, nothing herein shall require the Debtor or the Reorganized Debtor, as the case may be, to make a Distribution which, when added to payments received from other sources on account of the applicable Claim, would result in the Holder of the applicable Claim receiving more than the Allowed Amount of such Claim.

**9.08** ***No Interest on Claims.*** Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

**9.09** ***Compliance with Tax Requirements.*** In connection with the Plan, the Debtor and the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## Article 10

## CONDITIONS PRECEDENT

**10.01** ***Condition Precedent to Confirmation of the Plan.*** Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtor to consummate this Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding this Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtor.

**10.02** ***Condition Precedent to Effective Date***. The Effective Date will not occur and the Plan will not be consummated until

(a) the Bankruptcy Court has entered the Confirmation Order, in form and substance satisfactory to the Debtor on the Docket of the Reorganization Case;

(b) no stay of the Confirmation Order is in effect; and

(c) 14 days have passed following the entry of the Confirmation Order and, if the fourteenth day following entry of such order is not a business day, the business day following the passage of 14 days has passed.

**10.03** ***Waiver of Conditions Precedent.*** The Debtor may elect to waive any condition precedent set forth above that has not been satisfied on or before the date of the Confirmation Hearing.

## Article 11

## DISCHARGE, LIMITATION OF LIABILITY, AND GENERAL INJUNCTION

**11.01** *Discharge of Claims*. **Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and the Reorganized Debtor of any and all Debts of, and Claims of any nature whatsoever against the Debtor or its Estate that arose at any time prior to the Confirmation Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtor, the Estate, and the Reorganized Debtor, and their respective successors or assigns, will be discharged from any Claim or Debt that arose prior to the Confirmation Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor, the Estate, the Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order will contain appropriate injunctive language to that effect. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other Debts and Liabilities against the Debtor or its Estate, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor or its Estate, at any time, to the extent that such judgment relates to a discharged Claim, Liability or Debt. Notwithstanding the foregoing, if under the Plan the Reorganized Debtor is obligated to make payments to Holders of Allowed Claims, the Reorganized Debtor will remain obligated to make such payments. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition Federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from**

**asserting such Administrative Expense Claims against the Debtor, the Estate, the Reorganized Debtor, or any of their respective Assets or Property.**

**11.02** ***General Injunction.*** **Pursuant to Sections 105, 1123, 1129, and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Confirmation Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim or other Debt, Liability, or Equity Interests that is discharged pursuant to the terms of the Plan are and will be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged Claims, Debts, Liabilities, or Equity Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:**

(a) **commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, and the Reorganized Debtor;**

(b) **enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, or the Reorganized Debtor;**

(c) **creating, perfecting, or enforcing any Lien, or encumbrance against the Debtor, the Estate, or the Reorganized Debtor;**

(d) **asserting a setoff, right of subrogation, or recoupment of any kind against any Debt, Liability, or obligation due to the Debtor, the Estate, or the Reorganized Debtor; or**

(e) **commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.**

**The Debtor and the Reorganized Debtor will have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.**

**11.03** ***Exculpation from Liability.*** **The Debtor and the Reorganized Debtor, and their respective directors, officers, employees, agents, representatives, accountants, attorneys, and Professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns (the "Exculpated Parties"), will neither have nor incur any Liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Case; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The**

**rights granted under this Article 11 are cumulative with and not restrictive of any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.**

**11.04** ***Matching Injunction.***

**Provided that the Reorganized Debtor is not in default of payments due to such Creditor under the Plan, any Creditor, including any party to a restructured loan, an Assumed Restructured Lease, or Rejected Lease, shall be enjoined and barred from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Guarantor; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Guarantor; (c) creating, perfecting or enforcing any Lien or encumbrance against the Guarantor; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Guarantor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Guarantor. The injunction shall dissolve, with respect to a particular Creditor, in the event that the Reorganized Debtor defaults on the payments set forth in Article 5 or Article 7 of the Plan with respect to the applicable Creditor. All claims and defenses of Creditors, the Debtor, the Reorganized Debtor, and/or Guarantor shall be preserved. The Debtor, the Reorganized Debtor, and/or Guarantor shall have the right to independently seek enforcement of this injunction provision. This injunction provision is an integral part of the Plan and is essential to its implementation.**

**During the time the matching injunction is in place, the Guarantor shall not receive any distribution from the Reorganized Debtor out of the ordinary course of business without (i) Bankruptcy Court approval or (ii) approval of any affected Debtor-related Creditor.**

**11.05** ***Term of Certain Injunctions and Automatic Stay.*** All injunctions or automatic stays provided for in the Reorganization Case pursuant to Sections 105, 362, and/or other applicable provisions of the Bankruptcy Code or otherwise and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. Any preliminary or permanent injunction entered by the Bankruptcy Court will continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court. With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Prepetition Claims asserted therein and/or that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtor affirmatively elects to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elects to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed

or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtor as provided herein.

**11.06** ***No Liability for Tax Claims.*** Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established with respect to such Claim, no Claim of such Governmental Unit will be Allowed against the Debtor or Reorganized Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor, any of their Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**11.07** ***No Liability for Untimely Administrative Expense Claims.*** Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition Federal, state or local taxes) whose administrative expense claim is not asserted through application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtor and the Reorganized Debtor.

## Article 12

### RETENTION OF JURISDICTION

**12.01** ***General Retention.*** Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Case is closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction of the Reorganization Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**12.02** ***Specific Purposes.*** In addition to the general retention of jurisdiction set forth in Section 12.01, after Confirmation of the Plan and until the Reorganization Case is closed, the Bankruptcy Court will retain jurisdiction of the Reorganization Case for the following specific purposes:

(a) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

(b) to determine any and all cases, controversies, suits or disputes arising under or relating to the Plan or the Confirmation Order (including regarding the effect of any release, discharge, or injunction provisions provided for herein or affected hereby and regarding whether conditions to the consummation and/or Effective Date of the Plan have been satisfied) and to enforce the obligations under the Plan;

(c) to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Reorganization Case; provided, however,

that this retention of jurisdiction will not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor or the Reorganized Debtor;

(d) to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable (including Assumed Contracts), and to determine the allowance of any Claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed and/or assigned executory contracts or unexpired leases (including Assumed Contracts), including Cure Claims;

(e) to determine any and all motions, applications, adversary proceedings, contested or litigated matters, causes of action, and any other matters involving the Debtor commenced in connection with, or arising during, the Reorganization Case and pending on the Effective Date, including approval of proposed settlements thereof;

(f) to enforce, interpret, and administer the terms and provisions of the Plan and the Plan Documents;

(g) to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(h) to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or the Estate;

(i) to assure the performance by the Reorganized Debtor of its obligations to make distributions under the Plan;

(j) to correct any defect, cure any omission, reconcile any inconsistency, and make any other necessary change or modification in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(k) to resolve any disputes concerning any release of a nondebtor under the Plan or the injunction against acts, employment of process, or actions against such nondebtor arising under the Plan;

(l) to enforce all orders, judgments, injunctions, and rulings entered in connection with the Reorganization Case;

(m) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures

and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

(n) to review and approve any sale or transfer of assets or Property by the Debtor or Reorganized Debtor, including prior to or after the date of the Plan, and determine all questions and disputes regarding such sales or transfers;

(o) to determine all questions and disputes regarding title to the assets of the Debtor, the Estate, or the Reorganized Debtor;

(p) to determine any motions or contested matters relating to the Causes of Action, whether brought before or after the Effective Date;

(q) to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

(r) to resolve any determinations which may be requested by the Debtor or the Reorganized Debtor of any unpaid or potential tax liability or any matters relating to unpaid or potential tax liability under Sections 505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion of taxable year ending on or before the Effective Date;

(s) to issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan, Plan Documents, or the Confirmation Order;

(t) to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(u) to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Documents;

(v) to enter such orders as are necessary to implement and enforce the injunctions described in this Plan;

(w) to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(x) to enter an order concluding and terminating the Reorganization Case.

**12.03** ***Closing of the Reorganization Case.*** In addition to the retention of jurisdiction set forth in Sections 12.01 and 12.02 above, the Bankruptcy Court will retain jurisdiction of the Reorganization Case to enter an order reopening the Reorganization Case after it has been closed.

## Article 13
### Modification of Plan and Confirmation Over Objection

**13.01** ***Modification Prior to Entry of Confirmation Order.*** The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. The Plan may not be altered, amended or modified without the written consent of the Debtor.

**13.02** ***Modification After Entry of Confirmation Order.*** After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor may obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (b) such modification will not materially adversely affect the interests, rights, treatment, or distributions of any Class of Allowed Claim or Allowed Equity Interest under the Plan.

**13.03** ***Modification After Confirmation Date.*** After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor obtains Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds (⅔) in amount, and more than one-half (½) in number, of Allowed Claims or Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtor complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

**13.04** ***Confirmation Over Objections.*** In the event that any Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Section 14.02, the Debtor requests, and will be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such Impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modifications or amendments will be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications will require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court will require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtor reserves any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## Article 14
### MISCELLANEOUS PROVISIONS

**14.01** ***No Admissions.*** The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein will be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**14.02** ***Revocation or Withdrawal of the Plan.*** The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan will be deemed null and void in all respects, and nothing contained in the Plan will be deemed (a) to constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person or (b) to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**14.03** ***Settlement of Claims and Causes of Action.*** The Reorganized Debtor may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any claim or Cause of Action which the Debtor had or had power to assert immediately prior to the Confirmation Date and may settle or adjust such claim or Cause of Action.

**14.04** ***Standard for Approval by Bankruptcy Court.*** If any of the matters described in this Plan is brought for approval before the Bankruptcy Court, any such approval will mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

**14.05** ***Further Assurances.*** The Debtor agrees and is authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

**14.06** ***Headings.*** The headings and table of contents used in the Plan are for convenience and reference only and will not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**14.07** ***Notices.*** All notices, requests, or other documents in connection with or required to be served by the Plan will be in writing and will be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

(a) If to the Debtor, Reorganized Debtor, or Reorganized Debtor:

Cinemaworld of Florida, Inc.
Attn: Richard N. Starr, Sr., President
970 16th Place
Vero Beach, Florida 32960

with a mandatory copy to:

Elena Paras Ketchum, Esquire
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602

**14.08** ***Contemporaneous Service.*** Copies of all notices under this Plan to any party will be given to the Debtor or the Reorganized Debtor contemporaneously with the giving of notice to such party.

**14.09** ***Changes of Address.*** Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

**14.10** ***Governing Law.*** Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**14.11** ***Limitation of Allowance.*** No attorney's fees, punitive damages, penalties, special damages, lost profits, treble damages, exemplary damages, or interest will be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

**14.12** ***Estimated Claims.*** To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

**14.13** ***Consent to Jurisdiction.*** Upon any default under the Plan, the Debtor consents to the jurisdiction of the Bankruptcy Court or any successor to the Bankruptcy Court and agrees that it will be the preferred forum for all proceedings relating to any such default. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim, by voting on the Plan, or by entering an appearance in the Reorganization Case, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and will be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Reorganization Case, including the matters and purposes set forth in Article 12 of the Plan. The Bankruptcy Court will maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

**14.14** ***Setoffs.*** Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor or the Reorganized Debtor may, but will not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor or the Reorganized Debtor may have against the

Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against such Holder.

**14.15** ***Successors and Assigns.*** The rights, benefits, duties, and obligations of any Person named or referred to in the Plan will be binding upon and will inure to the benefit of any heir, executor, administrator, successor, or assign of such Person.

**14.16** ***No Interest.*** Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim will be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Claim for any purpose.

**14.17** ***Modification of Payment Terms.*** The Debtor and the Reorganized Debtor, as appropriate, reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**14.18** ***Entire Agreement.*** The Plan and Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**14.19** ***Severability of Plan Provisions.*** If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.20** ***Confirmation Order and Plan Control.*** To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (any and other orders of the Court) will be construed together and consistent with the terms of the Plan.

**14.21** ***Computation of Time.*** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**14.22** ***Substantial Consummation.*** The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Reorganized Debtor of the distributions described in the Plan.

**14.23** ***No Liability for Solicitation.*** Pursuant to Section 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

* * * * *

[*remainder of page intentionally blank*]

Dated: March 30, 2026.

Cinemaworld of Florida, Inc.

By: ______________________________
Richard N. Starr, Sr.
President

*/s/ Elena Paras Ketchum*
Elena Paras Ketchum
Florida Bar No. 0129267
**STICHTER, RIEDEL, BLAIN & POSTLER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: eketchum@srbp.com
**ATTORNEYS FOR DEBTOR**

**Exhibit A - ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; RESTRUCTURED LOANS**

**I. Assumed Executory Contracts, as may be amended, and Unexpired Leases:**

a. Arsenal Yards Core Holding LLC – lease of real property at 81 Arsenal Yards Blvd., Watertown, MA, as amended pursuant to the Debtor's Plan of Reorganization

b. Luria Plaza, LLC – lease of real property at 940 14th Lane, Vero Beach, Florida, as amended pursuant to the Debtor's Plan of Reorganization

c. R2 Leasing, LLC - lease of real property at 970 16th Place, Vero Beach, Florida

d. Mr. and Mrs. Richard N. Starr, Sr. – lease of real property in Boston, MA

e. Acura Financial Services - vehicle lease of 2023 Acura (Acct No. ending 7422 / VIN ending 3862)

f. Pepsi contract

g. ICEE contract

h. Sysco contract

i. Except for those specifically rejected, all studio contracts, including the following:
   1) A24 Films
   2) Ahoy Associates
   3) Amazon MGM Studios
   4) ANGEL Studios
   5) Bleecker Street Media
   6) Briarcliff Entertainment
   7) BY Experience (for NT Live)
   8) CMC
   9) CSC
   10) Falling FWD
   11) Family Movie Events
   12) Greenwhich Entertainment
   13) ICONIC Events Releasing
   14) IFC Entertainment Group
   15) Level 33 Entertainment
   16) Lionsgate
   17) Magnolia Pictures
   18) MPI Media Group

19) NEON
20) Netflix
21) Paramount Pictures
22) Park Circus
23) RELATIVITY Media
24) Roadside Attractions
25) Sony Pictures Classics
26) SONY Pictures Releasing
27) SPOTLIGHT Cinema Networks
28) The Metropolitan Opera
29) Trafalgar Releasing LTD
30) Universal Studios
31) Variance Films
32) VERTICAL Entertainment
33) VIVA Pictures
34) Walt Disney Studios
35) Warner Bros. Distributing, Inc.

**II. <u>Restructured Loans</u>**:

a. The Northern Trust Company – as restructured pursuant to the Debtor's Plan of Reorganization

**Exhibit B - REJECTED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; LOANS NOT BEING RESTRUCTURED**

**I. Rejected Executory Contracts and Unexpired Leases:**

a. Lincoln Commons Owner, LLC – leases for premises at the Lincoln Mall a/k/a Lincoln Commons, 622 George Washington Hwy, Lincoln, Rhode Island

b. ACAR Leasing LTD d/b/a GM Financial Leasing - vehicle lease of 2023 Chevrolet Silverado (VIN ending 1813)

c. Coastal Mechanical Services – maintenance contract for Melbourne, FL location

d. Callahan Digital Cinema – monthly service agreement for all locations

e. DDI Leasing, Inc. – Master Agreement and Lease Schedule Number TSM05642A to Master Agreement dated February 16, 2022

f. AC JV, LLC ("**Fathom**") – Special Events Network Affiliate Agreement

g. EcoLab, Inc. – lease of dishwasher

h. Desert Lab Studio, LLC

i. Showtime Analytics Limited – Software Service License Agreement

j. The following studio contracts are specifically rejected:

   1) Emick Media, LLC
   2) FATHOM Entertainment
   3) FIRESTORM Entertainment LLC
   4) GKIDS
   5) Joe Hand Promotions
   6) Luminosity Entertainment
   7) Magenta Light
   8) SABAN Films LLC (Eammons Films)
   9) SHOWBIZ Direct Distribution
   10) Western Film Services

k. Any equipment or other type of lease related to the Melbourne, FL location

l. Any service contract related to the Melbourne, FL location

m. Any equipment or other type of lease related to the Lincoln, RI location

n. Any service contract related to the Lincoln, RI location

## II. **Loans not being restructured and for which collateral has been surrendered:**

a. Clinton Savings Bank